UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGETTE G. PURNELL, | No. 1:20-cv-01759-NONE-EPG |
| Plaintiff, | SCREENING ORDER |
| v. | ORDER FOR PLAINTIFF TO: |
| N. HUNT, et al., | (1) FILE A FIRST AMENDED COMPLAINT |
| Defendants. | (2) NOTIFY THE COURT THAT SHE WISHES TO PROCEED ONLY ON THE CLAIM AGAINST DEFENDANTS HUNT, LUPER, GARCIA-PERALTA AND CARTER FOR EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT; OR |
| | (3) NOTIFY THE COURT THAT SHE WISHES TO STAND ON HER COMPLAINT |
| | (ECF NO. 1) |
| | THIRTY DAY DEADLINE |

Plaintiff Georgette G. Purnell ("Plaintiff") is proceeding *pro se* and *in forma pauperis* in this civil rights action. Plaintiff filed the Complaint commencing this action on December 11, 2020. (ECF No. 1). The Complaint brings claims concerning the way Plaintiff was treated by defendants, who are law enforcement officers, after an automobile collision. The Court finds that the Complaint states a claim for excessive force in violation of the Fourth Amendment against

Defendants Hunt, Luper, Garcia-Peralta and Carter. The Court finds that Plaintiff has failed to state any other claims.

The Court will provide Plaintiff with leave to file a first amended complaint, with the assistance of the legal standards set forth below, if she believes that additional facts will establish other claims. Plaintiff may also choose to proceed only on the claims found cognizable in this order, or to stand on this Complaint, subject to the Court issuing findings and recommendations to the assigned district judge consistent with this order.

## I. SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis*, the Court screens the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that pro se complaints should continue to be liberally construed after *Iqbal*).

## II. ALLEGATIONS IN THE COMPLAINT

Plaintiff's complaint alleges as follows:

2

On June 27, 2020, Plaintiff was a passenger in a rental car that was in a collision in Fresno. The driver of the vehicle fled on foot. Plaintiff remained at the scene and contacted the California Highway Patrol. Defendants Sergeant N. Hunt and Officer Luper responded. Plaintiff told them that she was a passenger and the driver fled on foot. Defendants Hunt and Luper arrested Plaintiff. Plaintiff informed them that she had a purse in the car with $890 and other property therein, but they did not permit her to retrieve her personal property from the car.

Plaintiff refused to take a breathalyzer test. Plaintiff believes a warrant was issued to draw her blood. She was taken to a hospital. Defendants Hunt, Luper, Officer Garcia-Peralta and Officer Carter lifted Plaintiff and slammed her facedown on a gurney. Plaintiff saw stars due to the force used. Plaintiff was afraid. One of their knees was placed "in the spam of [her] back applying great pressure," and she could not breathe.

Plaintiff never resisted at any time. She was handcuffed with her hands behind her back during the entire encounter.

Plaintiff attached a government claim form to her complaint and various responses.

Plaintiff also attaches a civilian's complaint she filed with the California Highway Patrol. One of the pages includes a summary of a telephone call that appears to be written by Sergeant J. Tyler concerning Plaintiff's allegations. According to the summary, Plaintiff alleges that Defendants Hunt, Luper and Garcia failed to secure her property after her arrest. She "believes the officers on scene are corrupt and either stole it or purposely misplaced it to inconvenience her. [Plaintiff] also alleged that the tow company may have failed to secure her property[,] stating that they may have stolen it or failed to secure their yard."

Plaintiff states that her causes of action are under the Fourth Amendment for excessive force; "Protection of personal property after being arrested. Fourteenth (14th) Amendment" and "intentional emotional distress."

**III.    SECTION 1983**

The Court construes Plaintiff's constitutional causes of action as arising under the Civil Rights Act. It provides:

\\\

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979*)); see also Chapman v. Houston Welfare Rights Org*., 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived her of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs*., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of her rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must

be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

**IV. ANALYSIS OF PLAINTIFF'S CLAIMS**

    **A. Fourth Amendment Excessive Force**

A § 1983 claim for excessive use of force during an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395-99 (1989). "The question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018) (quoting *Graham*, 490 U.S. at 397). To determine whether the force used is "objectively reasonable," the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 397. "The essence of the *Graham* objective reasonableness analysis is that the force which was applied must be balanced against the *need* for that force: it is the need for force which is at the heart of the *Graham* factors." *Headwaters Forest Def. v. Cty. of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002), *as amended* (Jan. 30, 2002) (quoting *Liston v. County of Riverside,* 120 F.3d 965, 976 (9th Cir. 1997) (internal quotation marks and brackets omitted).

Under that test, a court must "first assess the quantum of force used to arrest the plaintiff by considering the type and amount of force inflicted." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) (internal quotation marks and brackets omitted). Second, a court balances the government's countervailing interests. This involves considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Using these factors, a court must determine "whether the force employed was greater than is reasonable under the circumstances." *Drummond*, 343 F.3d at 1058.

Here, Plaintiff alleges that she was handcuffed while four officers slammed her facedown

on a gurney to the point where she saw stars so that her blood could be drawn. She further alleges that she could not breathe and that she was not resisting. For screening purposes, Plaintiff's complaint states a claim against those four officers—Defendants Hunt, Luper, Garcia-Peralta and Carter—under the Fourth Amendment for excessive force.

**B.     Fourteenth Amendment: Deprivation of Property**

Authorized intentional deprivation of property pursuant to an established state procedure is actionable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 532 & n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985).

On the other hand, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533. "California law provides an adequate post-deprivation remedy for any property deprivations." *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-95).

Here, reading Plaintiff's complaint liberally, Plaintiff alleges that after Defendants arrested her, they either stole her property or were negligent in failing to prevent a towing company from losing or stealing her property. These deprivations are unauthorized. Plaintiff has adequate California remedies. *See Barnett*, 31 F.3d at 816-17. Therefore, Plaintiff has failed to state a due process claim under the Fourteenth Amendment.

**C.     State Law Claims**

"Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person." Cal. Gov't Code § 820(a).

"Section 950.2 [of the California Government Code provides that 'a cause of action against a public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred' unless a timely claim has been filed against the employing public entity." *Fowler v. Howell,* 42 Cal.App.4th 1746, 1750 (1996) (alteration

6

omitted). California courts construing the section explain that: "included in the [Government] Claims Act [is] what amounts to a requirement that one who sues a public employee on the basis of acts or omissions in the scope of the defendant's employment [must] have filed a claim against the public entity employer pursuant to the procedure for claims against public entities." *Briggs v. Lawrence,* 230 Cal.App.3d 605, 612–13 (1991).

Plaintiff has attached a Government Claims Act form to her complaint. For screening purposes only, the Court finds that Plaintiff has sufficiently alleged compliance with the Government Claims Act.

### 1. Intentional Infliction of Emotional Distress

Plaintiff brings a state-law claim for intentional infliction of emotional distress. The California Supreme Court has held the following concerning such claims:

> A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. A defendant's conduct is "outrageous" when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. And the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result. . . .
>
> With respect to the requirement that the plaintiff show severe emotional distress, this court has set a high bar. Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it.

*Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009) (cleaned up).

Here, Plaintiff has not alleged the elements for intentional infliction of emotional distress. Plaintiff alleges Defendants used excessive force on her in connection with drawing her blood. However, she has not alleged that their conduct had the intent to cause, or was with reckless disregard of the probability of causing, emotional distress. She has not alleged that she suffered severe or extreme emotional distress. And she has not alleged that Defendants' conduct caused any resulting emotional distress. Therefore, Plaintiff fails to state a claim for intentional infliction of emotional distress.

2. <u>Unasserted State Law Standards</u>

Plaintiff has not alleged any other state-law claims. However, given the dismissal of Plaintiff's Fourteenth Amendment claim and the inclusion of a Government Claims Act form, the Court provides the following legal standards, which may be relevant to her claims. If Plaintiff wishes to bring any additional claims and believes she can truthfully allege facts stating such claims under these legal standards, Plaintiff may file an amended complaint including such claims, which the Court will screen in due course.

a. Conversion

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 543–44 (1996), *as modified on denial of reh'g* (Apr. 10, 1996). Other plaintiffs have asserted claims against California police officers for conversion for illegally taking property while on duty. *See, e.g., Gutierrez v. Cnty. of Los Angeles*, No. CV 10-7589-CAS PLAX, 2013 WL 3821602, at *16 (C.D. Cal. July 22, 2013) (denying defendants' motion for summary judgment on such claim).

b. Common-Law Negligence

"[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 292 (1988); *accord Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 716 (2001) ("Under general negligence principles, of course, a person ordinarily is obligated to exercise due care in his or her own actions so as to not to create an unreasonable risk of injury to others, and this legal duty generally is owed to the class of persons who it is reasonably foreseeable may be injured as the result of the actor's conduct.").

In *Lugtu*, the California Supreme Court discussed what duties law enforcement officers have to individuals they pull over:

8

>Consistent with the basic tort principle recognizing that the general duty of due care includes a duty not to expose others to an unreasonable risk of injury at the hands of third parties, past California cases uniformly hold that a police officer who exercises his or her authority to direct another person to proceed to—or to stop at—a particular location, owes such a person a duty to use reasonable care in giving that direction, so as not to place the person in danger or to expose the person to an unreasonable risk of harm. Thus, for example, in *Williams v. State of California* (1983) 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137, this court recognized that although law enforcement officers, like other members of the public, generally do not have a legal duty to come to the aid of a person, in carrying out routine traffic enforcement duties or investigations, a duty of care does arise when an officer engages in "*an affirmative act which places the person in peril or increases the risk of harm* as in *McCorkle v. Los Angeles* (1969) 70 Cal.2d 252, 74 Cal.Rptr. 389, 449 P.2d 453, where an officer investigating an accident directed the plaintiff to follow him into the middle of the intersection where the plaintiff was hit by another car." (34 Cal.3d at p. 24, 192 Cal.Rptr. 233, 664 P.2d 137, italics added.)
>
>The Court of Appeal recognized this same principle in *Whitton v. State of California* (1979) 98 Cal.App.3d 235, 159 Cal.Rptr. 405. In that case, CHP officers had made a traffic stop of the plaintiff's automobile on the right shoulder of a highway, parking their patrol car 10 to 15 feet behind the plaintiff's vehicle, and a drunk driver subsequently struck the patrol car, propelling it into the plaintiff while she was standing between the patrol car and her own vehicle. Although the Court of Appeal in *Whitton* found that sufficient evidence supported the jury's determination that, under the circumstances of the case, the officers had acted with reasonable care and thus should not be held liable, that court explicitly recognized that the CHP officers, in making the traffic stop, had a duty "to perform their official duties in a reasonable manner." (*Id.* at p. 241, 159 Cal.Rptr. 405; see also *Reed v. City of San Diego* (1947) 77 Cal.App.2d 860, 866–867, 177 P.2d 21 [upholding jury verdict imposing liability upon police department where officers' negligence in positioning their patrol car during a traffic stop resulted in an injury to the stopped motorist when a third car collided with the police vehicle].) Other states also have recognized that law enforcement officers, in making a traffic stop, have a legal duty to exercise due care for the safety of those whom they stop and may incur liability when their failure to exercise such care exposes a person to injury at the hands of another motorist. (See, e.g., *Kaisner v. Kolb* (Fla.1989) 543 So.2d 732, 734–736; *Kinsey v. Town of Kenly* (1965) 263 N.C. 376, 139 S.E.2d 686, 688–690.)
>
>Accordingly, we conclude that, under California law, a law enforcement officer has a duty to exercise reasonable care for the safety of those persons whom the officer stops, and that this duty includes the obligation not to expose such persons to an unreasonable risk of injury by third parties.

*Lugtu*, 26 Cal. 4th at 717–18.

9

### V.     CONCLUSION AND ORDER

The Court has screened Plaintiff's complaint and finds that it states a claim against Defendants Hunt, Luper, Garcia-Peralta and Carter for excessive force in violation of the Fourth Amendment. The Court finds Plaintiff's complaint fails to state any other claims.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Accordingly, the Court will provide Plaintiff with time to file an amended complaint, so that Plaintiff can provide additional factual allegations. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file an amended complaint within thirty days.

If Plaintiff chooses to amend her complaint, in her amended complaint she must state what each named defendant did that led to the deprivation of his constitutional or other federal rights. Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although she has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Plaintiff has a choice on how to proceed. Plaintiff may file an amended complaint if she believes that additional true factual allegations would state cognizable claim(s) or that her allegations state additional causes of action. If Plaintiff files an amended complaint, the Court will screen that complaint in due course. Plaintiff may file a notice with the Court that she wants to proceed only on the claim found cognizable in this order, in which case the Court will authorize service of the complaint on defendants. Alternatively, Plaintiff may choose to stand on

10

her complaint subject to the Court issuing findings and recommendations to a district judge consistent with this order.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
   a. File a First Amended Complaint;
   b. Notify the Court in writing that she wants to proceed only on the claim against Defendants Hunt, Luper, Garcia-Peralta and Carter for violations of the Fourth Amendment; or
   c. Notify the Court in writing that she wants to stand on this complaint;
2. If Plaintiff chooses to file an amended complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to case number 1:20-cv-01759-NONE-EPG; and
3. <u>Failure to comply with this order may result in the dismissal of this action</u>.

IT IS SO ORDERED.

Dated:   **January 11, 2021**         /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE

11